## JOHN T. JONES v. ALVIN N. BLACKLIDGE.

CONTRACTS; *Assignment of Claims against the Government; Act of Congress; Public Policy.* A contract between two parties whereby one party agrees to prosecute and collect a claim for the other, against the United States, for twenty per cent. of the amount thereof, is in contravention of the first section of the act of congress to prevent frauds upon the treasury of the United States, and therefore void.

### *Error from Douglas District Court.*

ACTION brought by *Blacklidge* to recover $1,340 alleged to be due upon a certain contract. The case was tried at the June Term 1871 of the district court, and *Blacklidge* had judgment for the amount claimed, and interest, and costs. *Jones* excepted, and now brings the case here for review. The opinion contains a full statement of the facts.

*J. W. Deford,* and *A. W. Benson,* for plaintiff in error:

1. Blacklidge avers that Jones assigned to him 20 per cent., or the one-fifth part, of a claim of $6,700 against the U. S., upon condition that he, Blacklidge, should prosecute the same and procure it to be paid by the government; and he alleges that he fully performed that service, but that Jones has refused to pay over to him his share of the claim. Such assignment of an interest in his claim by Jones to Blacklidge having been made before "the issuing of a warrant for its payment," was void and illegal. (10 Stat. at Large, p. 170, §1.) "This act annuls all champertous contracts with agents of private claims." 16 How., 336. The plaintiff's petition,

therefore, disclosing an unlawful cause of action, does not "state facts sufficient to constitute a cause of action." Hence the judgment is erroneous. 21 Ind., 479. If it be objected that this point, not having been raised below, cannot be made here, we answer, that for error apparent on the face of the record this court will reverse the judgment of the district court, although no exception be taken. The objection that the petition does not state facts sufficient to constitute a cause of action is never waived. Civil code, §§ 91, 542; 37 Mo., 31; 2 Kas., 159; 39 Cal., 501.

2. The court. erred in admitting in evidence the written contract between the parties. Said contract is void by virtue of § 1 of the "act to. prevent frauds on the treasury," since it is in effect a transfer by Jones to Blacklidge of a fifth conditional interest in his claim on the United States, before the issuing of a warrant for ·its payment. 16 How., 334. It provides a compensation, to be made to B. for his services, *contingent* entirely on his success in collecting the claim, and is therefore ·void as against the policy of the law. "Agreements for compensation *contingent upon success*, suggest the use of sinister and corrupt means for the accomplishment of the end desired. The law meets the suggestion of evil, and strikes down the contract from its inception." "The law looks to the general tendency of such agreements; and it closes the door to temptation by refusing them recognition in any of the courts of the country." And this, "without reference to the question whether improper means are contemplated or used in their execution." 2 Wall., 45. In the case of *Bryan v. Reynolds*, 5 Wis., 200, a contract, which is in substance very similar to that in question, was held void as "contrary to public policy." The compensation to be paid to the agents and attorneys in that case, and in this, is *contingent*, and therefore both hold out a temptation to the use of undue means to secure their collection, and are equally invalid. 21 Ind., 479.

3. But it is claimed by the plaintiff below, that the authority given him by Jones was a "power coupled with an

interest," and was therefore irrevocable. But see 7 Am. Law Reg., 106, 108.

4. The two instructions asked by the plaintiff, and given by the court, are erroneous. The first of said instructions, in effect, directed the jury to find for plaintiff the whole amount he claimed, if they found that he had performed the services called for by the agreement set forth in his petition. Now the petition states that the contract was made by J. with B. as "his agent and attorney," and, where this is the case, it seems to be well settled, that before the agent or attorney can recover, he must show that the contract was free from all fraud, undue influence, and exorbitancy of demand. The court should have told the jury that B. could not recover, in any event, more than his services were reasonably worth, and that the *onus* of proof was on him. 5 Denio, 640; 11 Paige, 538; 34 N. Y., 169; 4 Seld., 162. And the other instruction is open to the same objection. Blacklidge contended below that the contract did not provide that he should receive for his compensation any part *of*, but only twenty per cent. "*on*" the claim, and that therefore it was neither within the "act to prevent frauds," etc., nor of a champertous nature. But the distinction seems too thin and unsubstantial. Can the law, "which looks through forms and phrases to the essence of things," be evaded by a mere "shuffle of prepositions?" Will it stop to inquire whether Jones shall pay the twenty per cent. "on" or "of" the $6,700? And whether he agreed to pay the twenty per cent. "*out of*" the $6,700, or to put *it* into one of his pockets, and then draw the per cent. out of another and hand it over to B., will the transaction be any the less offensive in the eye of the law?

5. The instructions as asked by plaintiff in error should have been given to the jury. 2 Wall., 45; 16 How., 334, 337. In this latter cause, the U. S. supreme court, after citing a number of cases, says: "The sum of these cases is, that all contracts for a *contingent compensation* for obtaining legislation, or to use personal, or any secret or sinister influence on legislators, are void by the policy of the law." And in 6 Dana, 366,

the court says: "A lawyer may be entitled to compensation for writing a petition, or even for making a public argument before the legislature, or a committee thereof; but the law should not help him or any other person to a recompense for exercising any *personal influence in any way*, in any act of legislation." Yet the testimony in this case throughout shows that if B. had anything at all to do with the procuring of the passage of the act for the relief of Jones, (16 Stat. at Large, 34,) it was by the use of personal and secret influence, and of no other means. See the case of *Frost v. The Inhabitants of Belmont*, 6 Allen, 152.

The opinion of the court was delivered by

VALENTINE, J.: On the 24th of December 1864, John T. Jones, an adopted Ottawa Indian, had a claim pending in the Indian Department against the government of the United States for the sum of $6,700. The claim was originally larger, but it had been referred to the superintendent of Indian affairs for the central superintendency, who reported in favor of allowing that amount. The claim was for injuries done to the claimant's property in the year 1856. On the 24th of December 1864 Jones entered into an agreement in writing, with Blacklidge, as follows:

"Articles of agreement this day made between John T. Jones, of Franklin county, Kansas, and A. N. Blacklidge, of Lawrence, Kansas, witnesseth: That the said Jones has this day employed the said Blacklidge to prosecute and collect a claim for him and against the government of the United States, for the sum of $6,700, and for which service the said Jones agrees to pay the said Blacklidge twenty per centum on the amount of said claim when collected.

"*Ottawa*, December 24th, 1864. JOHN T. JONES."

At the time this agreement was made, an act of Congress, entitled "An act to prevent frauds upon the treasury of the United States," approved February 26th, 1853, was in force. Section one of said act reads as follows:

"*Be it enacted, etc.*, That all transfers and assignments hereafter made of any claim upon the United States, or any

part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or any part or share thereof, shall be absolutely null and void, unless the same shall be freely made and executed in the presence of at least two attesting witnesses after the allowance of such claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof." (10 U. S. Stat. at Large, 170, § 1.)

In a treaty with the Ottawas, of February 23d, 1867, a provision was inserted for the payment of this claim. (15 Stat. at Large, 518, art. 18.) And by an act of Congress of April 10th 1869 an appropriation was made for the payment of the same. (16 Stat. at Large, 34, *Ottawas*.) After this appropriation was made, Jones drew the whole amount of the claim, and then refused to pay Blacklidge any portion thereof. Blacklidge is now seeking by this action to recover his share thereof. Can he do it?

The validity of such contract or agreement is the first and principal question in the case. The question was raised in various ways in the court below, and now it comes squarely before this court. We do not hesitate to say that the contract was absolutely void. It was champertous in its nature, against public policy, and just such a contract as section one of the act of congress to prevent frauds upon the treasury of the United States wisely prohibited. It was a conditional transfer, or assignment, of a part, share, or interest in a claim against the United States, without attesting witnesses, and before a warrant for the payment thereof was issued. And it makes no difference that the consideration therefor were services to be performed in the future. The transfer or assignment of a claim is within the statute, (if otherwise within,) "whatever may be the consideration therefor." Any consideration that will support a contract will bring it within the statute, if it is within. Neither is it necessary that the interest transferred should be absolute, or vested, in order to come within the statute. A contingent or conditional interest is sufficient. The statute is express, that a conditional trans-

fer or assignment is sufficient; and if the transfer or assignment be conditional, the interest in the thing transferred or assigned must also of necessity be conditional. A contingent interest then, dependent upon performing the services, dependent upon collecting the claim, is a sufficient interest to bring the matter within the statute, if otherwise within. The defendant in error has filed no brief nor made any argument in this court; but from the record in the case we should judge, that in the court below, he at one time claimed that he obtained no interest, conditional or otherwise, in the claim itself, by virtue of said contract, which was prohibited by said act, and therefore that the contract was valid; and at another time he claimed that he had such an absolute and vested interest in the claim, that his power to collect the same could not be revoked, for any reason, by Jones—that his authority to collect said claim was "a power coupled with an interest." Probably neither of those claims was entirely correct. Certainly we think the first was erroneous. We suppose that it will hardly be claimed, that if the contract merely contemplated the collection of the money by Blacklidge, the paying it over to Jones, and then Jones paying for Blacklidge's services out of *other money*, instead of out of the *same money*, a sum equal to twenty per cent. of the claim, that the contract, as thus construed, would be valid, simply because the services were to be paid for out of *other money*, instead of out of the *same money*. Such a distinction would be altogether too finely drawn, too attenuated, too ethereal, too unsubstantial, to be entertained by courts of justice, who "look through forms and phrases to the essence of things." If the said act is to be construed as permitting such contracts, it would not tend very strongly "to prevent frauds upon the treasury of the United States." Anybody would be wise enough to know how to evade the law. Anybody would know how to purchase a claim, or an interest therein, and then pretendedly and ostensibly collect it for the person from whom he purchased, but in fact and in reality collect it (or his portion of the same,) for himself. Such a construction of said act would

impeach the wisdom and foresight of congress. Such a construction would show an imbecility on the part of congress scarcely conceivable—an imbecility that a town council for a country village would be ashamed of. But such is not the right construction. It was undoubtedly the intention of congress to make void all contracts like this, and all other contracts of a like nature: *Marshall v. B. & O. Rld. Co.*, 16 Howard, 324, 336. See also, *Coquillard, Adm'r, v. Bearss*, 21 Ind., 479; *Harris v. Roof's Ex'r*, 10 Barb., 489, 493, 495; *Bryan v. Reynolds*, 5 Wis., 200, and *Frost v. Inhabitants of Belmont*, 6 Allen, 152. All contracts for the collection of claims, whether the claims are to be prosecuted before the courts, before congress, or the legislature, or before any of the executive departments, for a compensation contingent upon success, are certainly against public policy; for the compensation in such cases being contingent, and often very large in amount, holds out great inducements and temptation to the use of undue, and even corrupt, means, for the collection of such claims. Whether all contracts of such a nature are void at common law, has been questioned; and for this very reason, we suppose, said act of congress was passed. This act puts at rest all question with reference to the validity of such contracts. It renders them all void. The judgment of the court below is reversed, and cause remanded for a new trial.

All the Justices concurring.