IKARD vs MINTER.

## Opinion delivered September 25, 1902.

1. *Unlawful Detainer—Citizenship Necessary to Jurisdiction—Cannot be Urged by Tenant Against Landlord.*

   In an action of unlawful detainer where it was necessary that plaintiff plead and prove Indian citizenship to establish his grantor's title to the land, the failure to plead this fact cannot be urged by the defendant because of the relation of landlord and tenant existing between him and plaintiff.

2. *Unlawful Detainer—Evidence—Declarations.*

   Declarations of an assignor or grantor as to title, are only admissible in evidence as against the grantee when, shown to have been made before the transfer.

3. *Indian Lands—Right to Hold—Mississippi Choctaws.*

   In an action of unlawful detainer, claims by the defendant that he had bought the lands from plaintiff's grantor prior to plaintiff's purchase thereof, could not avail him unless he also showed that he was a citizen of the Indian nation. Showing that he was a Mississippi Choctaw was not sufficient, for prior to 1898, Mississippi Choctaws, not then on the regular roll of the Choctaw Nation, could hold no lands in the Choctaw Nation, but had, only, the right to go before the commission to Five Civilized Tribes and make the necessary proof securing his enrollment, under Act of Congress June 28, 1898, Sec. .21 (30 Stat. 503) and Act of Cong. May 31, 1900 (31 Stat. 236).

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Action by W. H. Minter, Jr. against John M. Ikard. Judgment for plaintiff. Defendant appeals. Affirmed.

*Holding & Bond* and *Beavers & Sayer*, for appellant.

*E. M. Payne* and *Gilbert & Gilbert*, for appellee.

GILL, C. J.   This appeal is from a judgment rendered at the February, 1901, term of the United States Court for the Southern District of the Indian Territory, sitting at Chickasha (Hon. Hosea Townsend, judge presiding), against the appellant, John M. Ikard, and in favor of the appellee, W. H. Minter, Jr. The plaintiff alleges in his complaint that he is the owner and entitled to the possession of a certain tract of land described in the complaint; that he purchased said land from one J. E. Wright on the 25th day of November, 1899, for a valuable consideration.   He also avers that he became entitled to the possession of the land on the 1st day of January, 1900, because of the enactment by Congress of the Curtis Law (30 Stat. 495; Ind. Ter. Ann. St. 1899, c. 3a).   It appears from the record that Wright executed a quit-claim deed to plaintiff for the premises in controversy on the 25th day of November, 1900, for a consideration of $200, one-half of which sum was paid in cash, and the balance to be paid at some future time.   The complaint alleges that the defendant Ikard went into possession of the premises on the ——— day of ———, 189—, by virtue of a contract made with J. E. Wright for the improvement of said premises, by and with the consent of said J. E. Wright.   He also alleges that he and his wife are regularly enrolled members of the Chickasaw tribe of Indians, and that the defendants, Ikard and Larrison, are United States citizens.   Defendants filed their answer on the 15th day of October, 1900; the defendant Larrison disclaiming all interest in the premises in controversy.   Defendant Ikard denied that plaintiff was a member of the Chickasaw tribe of Indians; admitted that he was in possession of the premises, and alleged that he had purchased the improvements on the land from Wright in the month of June, 1895; that at the same time he bought the lease interest from Eugene F. Ikard, which Eugene

F. Ikard held by virtue of a written instrument executed on the 25th day of November, 1893. He answered, also, that he was a Choctaw Indian by blood. The cause was tried by a jury, and a verdict rendered for plaintiff for the possession of the premises, and damages in the sum of $1. Defendant filed his motion for a new trial, which was overruled by the court, to which action of the court the defendant excepted. Defendant filed his motion for appeal to this court, which was by the court allowed, and this cause is regularly here for decision.

### Demurrer.

Before proceeding to the assignments of error in this cause, appellant enters his demurrer to the complaint because the complaint does not state facts sufficient to constitute a cause of action. It is urged as reason for demurrer that the complaint fails to allege that Wright, plaintiff's grantor, is a Choctaw or Chickasaw citizen. The demurrer must be, and is, overruled. Tenants and privies may not dispute the title of the landlord. For the purpose of the case it could make no difference whether Wright was a Choctaw or Chickasaw citizen or not, if as the landlord he placed defendant or defendant's assignor in possession of the place as his tenant. Wright vs Lathrop (Ohio) 15 Am. Dec. 531; Jackson vs Davis, 5 Cow. 123, 15 Am. Dec. 451; Lockwood vs Walker, 3 McLean, 431, Fed. Cas. No. 8,451; Lucas vs Brooks, 85 U. S. 436, 21 L. Ed. 779.

### Assignments of Error.

The appellant claims that the court erred: "(1) In refusing to permit appellant to introduce evidence tending to show the conversation between J. E. Wright and the appellant at the time Wright delivered the possession of the premises in controvesry to appellant, and in refusing to permit appellant to introduce evidence showing what the conversation and understanding were between Wright and appellant in June, 1895, when appellant

purchased the premises from Wright, although the conversation and understanding were in the absence of appellee. (2) The court erred in giving the special instructions asked for by the appellee. (3) The court erred in refusing to instruct the jury that the Mississippi Choctaws have been recognized since 1830. (4) The court erred in overruling the motion for a new trial."

The effort was made on the part of the appellant in the trial court to introduce testimony of a conversation between J. E. Wright and the appellant at the time that the appellant purchased these premises of his brother, and in refusing to introduce a conversation between Wright and appellant in June, 1895, when the appellant claims he purchased the premises from Wright these conversations being in the absence of the appellee. And it will be necessary to examine at some length the testimony attempted to be offered by the appellant, to see whether or not such testimony was admissible: "John Ikard, the defendant, called and sworn as a witness in his own behalf. Q. You are the defendant in this action? A. Yes, sir. Q. I will ask you to state now where do you reside, Mr. Ikard? A. I reside about a mile and a half west of siding No. 1 on the Chicago Rock Island Railway. Q. I will ask you to state if you reside on the premises described in this complaint, and sued for in this action? A. Yes, sir. Q. I will ask you to state to the jury who is the owner of these premises? (Objected to as a conclusion of law.) Q. Who owns these premises at this time? A. I do. Q. I will ask you to state to the jury when you purchased these premises? A. About June, 1895, as well as I remember. Q. State to the jury who you purchased them of? A. Eugene F. Ikard. Q. Where did you enter into this agreement? A. Where my father now resides,—north of me about two miles, I reckon. Q. Was any one else there at that time? A. My father was there, and my brother and myself; also my wife. Q. What interest had Eugene F. Ikard in these premises at that time? (Objected to as irrelevant. The contract set out in the answer shows what interest

he had.) Q. I withdraw that. Who else was there at the time this purchase was made? A. Mr. Wright was present when we finally consummated the trade. Q. Well, now, was this purchase from Eugene F. Ikard concurred in by Mr. Wright? A. It was. Mr Gilbert: We object to any statements made by James E. Wright. Q. State to the jury how you purchased this land? A. Well, I purchased— My brother owed me a balance of some money on a partnership deal, and in settling up he proposed— (Objected to.) The Witness: My brother agreed to sell me an interest— (Objected to.) The Witness: Well, he did sell me this land and I told him— (Objected to.) The Witness: I went to my brother with Mr. Wright, and asked Mr. Wright— (Objected to.) The Witness: And asked Mr. Wright if he would— Q. Did you buy these premises of Mr. Wright? A. Yes, sir. Q. Who put you in possession? A. Mr. Wright. Q. Have you been in possession since that time? A. Yes, sir. (Objected to.) Q. Who has been in possession since the time of that purchase? A. I have. (Objected to as incompetent.) Q. Have you ever paid rents to anybody during that time? A. No, sir. Mr. Holding: That's all." It will be noticed that nowhere along the line does it appear that there was any refusal on the part of the court to allow any competent conversation between Mr. Wright and the defendant in this action in this part of the record. Later on, a further attempt was made to prove Wright's statements by E. F. Ikard, the father of the defendant, who had stated that he was present when John Ikard, the defendant, purchased these premises from Eugene Ikard, and the following questions were asked: "Q. Do you know who owns that tract of land? A. John Ikard. Q. Is that this defendant? A. Yes, sir. Q. Do you know when he purchased it? A. I think he purchased it about 1895. Q. Do you know of whom he purchased it? A. Eugene Ikard. Q. Did he buy any one else's interest at that time? A. Eugene Ikard had Wright's interest. Q. Did you ever

have any conversation with Mr. Wright about the sale of this land to your son? (Objected to as incompetent which objection was by the court sustained, to which ruling of the court the defendant, by his counsel, then and there duly excepted.) An examination of this question shows that it is very general in its nature. There is no time fixed as to the conversation,— whether it was before the alleged sale of the land, at the time of the alleged sale, or after the alleged sale: and the court could not know from the question whether the conversation called for would be competent or incompetent. It was objected to as incompetent, and, in the shape that it was put, it certainly was incompetent. The witness was not asked as to what the conversation was, but whether or not at any time he had ever had a conversation with Wright about the sale of the land to his son. He might have had dozens of conversations with reference to this matter, and these conversations might have been after the contract was consummated, or they might have been a part of the res gestæ that occurred at the time the contract, if any, was entered into, but no effort was made on the part of the defendant to prove what, if any, conversation occurred between the witness and Mr. Wright; and certainly there is no error in the refusal of the court to allow this question, nor does such refusal in any way prejudice the defendant, nor did he at the time, although excepting to the ruling of the court on this particular question, attempt to prove any conversation whatever, whether competent or incompetent, between the witness and Mr. Wright. Defendant afterwards sought to prove conversations with his alleged grantor, James E. Wright, had with the witness Carson, who was asked the following questions: "Q. I will ask you to state if you ever had any conversation with James E. Wright about the construction of any fence on any of this land? Mr. Gilbert: We object to that as being incompetent. Mr. Holding: I want to show in that conversation what he told about the ownership of that land and the source of our title. (Said objection was by the court sus-

tained, to which ruling of the court the defendant, by his counsel, then and there, duly excepted.)" These are the only attempts to prove conversation between any of the witnesses and said Wright. And we do not think that any of them were brought within the rule with reference to the introduction of conversations with a grantor concerning the title of the lands granted. Mr. Abbott, in his work on Trial Evidence, says: "An offer to give the acts or declarations of any assignor in evidence against the assignee must be so framed as to show they were made before the transfer, and are admissible as having been made against interest at the itme they were made, and the judge himself must determine the question of their admissibility, and not leave it to the jury to determine when they were made. If, on the evidence, it be left in doubt whether the declarations were made before or after the transfer, they must be excluded." Abbott, Trial Ev. p. 17, § 32; Vrooman vs King, 36 N. Y. 477. At no time during the trial of the cause, as shown by the transcript of record, did appellant attempt to prove declarations or admissions of J. E. Wright, or lay any foundation for the admission of such testimony; and the trial court held that the testimony, as offered, was incompetent, and the holding of the court was, in our opinion, correct.

The second assignment of error is that the court erred in giving the special instructions asked for by the appellee. There are no exceptions taken to the instructions given by the court to the jury of its own motion. At the conclusion of the court's instructions the court was asked by Mr. Gilbert to instruct the jury as follows: "Mr. Gilbert (attorney representing appellee): We ask the court to instruct the jury that at the time—that in 1895—a Mississippi Choctaw was not qualified to hold land in the Choctaw and Chickasaw Nations. The first time a Mississippi Choctaw was ever recognized as having any right in the Indian Territory was by the act of congress of June 28, 1898; and we ask the court to instruct the jury that prior to that time a

Mississippi Choctaw Indian had no right to hold land as a member of the Choctaw or Chickasaw Nation, or tribe of Indians, in the Indian Territory. Mr. Holding (attorney for appellee): We ask the court to instruct the jury that in 1830 the Mississippi Choctaws were all recognized. The Court: I recollect a little about it, because when I wrote the general opinion that I gave in these citizenship cases I went through every treaty from 1784 down, and read every one of them, and at that time I was pretty familiar, but I have been annoyed so much in trying lawsuits since that time that I have nearly forgotten everything I knew of that question. But my recollection at that time there were conditions; they had got to sell their lands and come to this country; and that this provision in the Curtis Act is the first provision giving that recognition. If he is now an Indian he can hold. Mr. Gilbert: The Court then instructs the jury that prior to June 28, 1898, a Mississippi Choctaw had no right to hold land in the Indian Territory? The Court: That is correct, I think. Mr. Gilbert: Now, we ask the court to instruct the jury that in 1893 Eugene F. Ikard made a rental contract with James E. Wright, and that in 1895 his interest in that contract was sold to John Ikard; that the only interest that Eugene F. Ikard could sell was the interest he held under the contract, and could convey no interest which would militate against the interest of his landlord, James E. Wright. The Court: No doubt about that as a legal proposition. Mr. Gilbert: We also ask the court to instruct the jury that, if the plaintiff in this case purchased this land from James E. Wright, that those who had formerly claimed under James E. Wright became the tenants of the plaintiff in this case. The Court: That is true, unless the defendant had purchased, from James E. Wright himself, Wright's title, previously. If he had, then he had a right to it provided he was an Indian. (To all of the special instructions asked by plaintiff and given by the court the defendants then and there, in open court, duly excepted." The court, by these special instrucions, held, in substance, that

the act known as the "Curtis Act," of June 28, 1898, was the first law to recognize the rights of Mississippi Choctaw Indians to hold lands in the Choctaw and Chickasaw Nations. The citizenship of the defendant was an issue in this case,—made such by the complaint and the answer. If up to June 28, 1898, the Mississippi Choctaws were without warrant of law to hold lands in the Choctaw and Chickasaw Nations as citizens thereof, and stood on the same footing with reference to those lands as other foreign citizens to said notion, the claim of the defendant that he purchased these lands could not in any sense avail him, if such purchase was prior to 1898; and the evidence shows and the pleadings show that, if any purchase or attempted purchase was made by defendant of Wright of these premises, the same was made some time in 1895. The Curtis law provides as follows: "Said commission (meaning the commission to the Five Civilized Tribes) shall have authority to determine the identity of Choctaw Indians, claiming rights in the Choctaw Lands, under Article 14 of the treaty between the United States and the Choctaw Nation, concluded September 27, 1830, and to that end they may administer oaths and perform all other acts necessary thereto, and make report to the secretary of the interior." 30 Stat. 503, § 21 (Ind. Ter. Ann. St. 1899, § 57z11.) And this provision is followed by the further provision that all rolls made up of Mississippi Choctaws shall be subject to the final supervision and approval of the secretary of the interior, and shall become final only when approved by him. And in 1900 Congress passed the further act in reference to the Choctaw and Chickasaw Nations, which seem to authorize the Mississippi Choctaws to participate in the distribution of the lands in the Choctaw and Chickasaw Nations, as follows: "That said commission shall continue to exercise all the authority hereunto conferred on it by law. But it shall not receive, consider or make any record of any application of any person for enrollment as a. member of any tribe in the Indian Territory, who has not been a recognized citizen thereof, and duly

and lawfully enrolled or admitted as such, and its refusals of such applications shall be final when approved by the secretary of the interior; provided, that any Mississippi Choctaw, duly identified as such by the United States Commission to the Five Civilized Tribes, shall have the right, at any time prior to the approval of the final rolls of the Choctaws and Chickasaws by the secretary of the interior, to make settlement within the Choctaw-Chickasaw country, and on proof of the fact of bona-fide settlement may be enrolled by the said United States Com-mission and by the secretary of the interior as Choctaws entitled to enrollment." 31 Stat. 236. It would seem from this that a Mississippi Choctaw, prior to this time, who had not been on the rolls of the Choctaw Nation as such citizen, could only obtain the right to be placed upon such rolls, and the benefits to be derived therefrom by participating in the division of the lands belonging to said nations, by going before the commission and making certain proof, and then being admitted to enrollment. And the whole question in this case was a question for the jury to decide, under the instructions of the court,—as to whether or not this man was in 1895, and prior to the purchase of these lands by the plaintiff, duly enrolled as a citizen of the Choctaw Nation. The court's instructions say, if he was, then he would have the right to purchase and to hold these lands as such pur-chaser; if he was not on such roll, he would have no such right, and could not become such purchaser of the premises. We think that the instruction of the court stated the law, and, while its form might be objectionable, no exception is taken to it.

The third error complained of is that the court erred in refusing to instruct the jury that the Mississippi Choctaws were recognized in 1830. This contention, for reasons heretofore stated, is certainly not good. There was no error on the part of the court in refusing to give the instruction requested by the appellant. And there being no error found in the whole case,

there is no error on the part of the court in overruling defendant's motion for a new trial.

The decision of the lower court, and judgment therein, is affirmed.