SAYER VS BROWN.

Opinion rendered Sept. 26, 1907.

(104 S. W. Rep. 877).

1. *Indian Lands—Legality of Contracts.*

By Act Cong. June 28, 1898, c. 517 § 29, 30 Stat. 507 which declares void the sale or incumbrance of an allottee's land except as provided therein, an agreement made between a white man and an intermarried Indian citizen for the purpose of securing titles to Indian land in name of the intermarried citizen to speculate upon is void. By Act Cong. July 1, 1902, c. 1362, 32 Stat. 642 lands allotted to members of the tribe and to freedmen shall not have any incumbrance such as deed or debt prior to the time when the land under this act may be alienated; therefore a contract made between an Indian citizen and a white man that the former would deed the latter his portion of land as soon as the restrictions were removed will not be enforced.

2. *Same—Subsequent Statutes.*

Where a contract between a white man and an Indian citizen to convey Indian lands was prohibited by statute at the time of making it was not legalized by the subsequent enactment of Act Cong. April 21, 1904, c. 1402, 33 Stat. 204, which removed restrictions from the lands of intermarried citizens excepting homesteads.

3. *Performance of Contract.*

As a general rule and illegal contract cannot be specifically enforced.

4. *Same—Consideration.*

Money paid as part consideration in an illegal contract cannot be recovered by a request for general relief, where specific enforcement of the contract is refused.

Appeal from the United States Court for the Southern District of the Indian Territory; before Justice J. T. Dickerson, December 29, 1905.

Action by D. D. Sayer against J. W. Brown. From a decree for defendant, plaintiff appeals. Affirmed.

*Beavers & Mills,* for appellant.

*Welborne & Hayes,* for appellee.

CLAYTON, J. This is a suit in equity, brought by appellant, for specific performance of a contract of sale of land and other relief. The plaintiff, appellant, is a white man. The defendant is an intermarried citizen of the Chickasaw Nation. The two conceived the idea of buying jointly a tract of Indian land lying adjoining the town of Chicasha, with the intention of having it included in that town, if possible, and then laying it off into lots and selling them, with the expectation of large profits. They purchased the land for $600, each paying $300; and, as the defendant was an Indian by marriage, the deed was made to him, with the agreement that he would hold the land for the joint use of both. They were unsuccessful in their efforts to include the land in the townsite. The plaintiff then proposed that they would divide the land. The defendant declined, and informed the plaintiff that he intended to allot it as a part of his surplus allotment. After some other transactions between them, not important here to mention, the defendant allotted the land. This was in August, 1903. In November following the two entered into a written contract defining the rights and duties of each relating to the land. Among other things it was agreed that upon a certain other matter, a lease, the plaintiff was to pay the defendant a certain sum of money, and it was provided that, inasmuch as the plaintiff was the owner of one-half of the land before allotment, the defendant, as soon as restrictions were removed, would execute a deed to plaintiff for his one-half interest. It is for the specific performance of this contract that this suit is brought.

If the sale of this land were a lawful one, and the contract between the parties not in violation of law, there is no question but that a court of equity would enforce it. But it was forbidden by the statute, and was against the policy of the government, and therefore void. Act Cong. June 28, 1898 (known as the

"(Curtis Bill") c. 517, § 29, 30 Stat. 507, provides "that all contracts looking to the sale or incumbrance in any way of the land of an allottee, except the sale heretofore provided, shall be null and void." By Act July 1, 1902, to ratify and confirm an agreement with the Choctaws and Chickasaws (32 Stat. 642, c. 1362), it is provided: "Lands allotted to members and freedmen shall not be affected or encumbered by any deed, debt or obligation of any character contracted prior to the time at which said land may be alienated under this act; nor shall said land be sold except as herein provided." And there is no provision in the act for such a sale or contract of sale as was attempted here. The agreements and the conduct of the parties from beginning to end was to procure title to Indian lands purely for the purpose of speculation. It was an attempt to circumvent the provisions of the statute, and in spite of it to get the benefits to be derived from ownership of these Indian lands. The contract by the very terms of the statute is void. How, then, can the court infuse life into it and direct its specific performance?

But it is argued that, since the contract was entered into and the land allotted, the conditions have changed; that by virtue of Act Cong. April 21, 1904, c. 1402, 33 Stat. 204, res rictions upon lands other than homesteads have been removed as to intermarried citizens; and therefore the defendant is now in position to make title legally. The rule of law is that the validity of a contract depends upon its legality or illegality at the time when it was made, and therefore it follows that, if an agreement was illegal by statute or on grounds of public policy when made, it is not rendered legal by a repeal of the statute or a subsequent change in public or legislative policy. 9 Cyc. 575, 576. (D), 1, 2, 3, and the numerous citations of authorities in footnote, including those of the Supreme Court of the United States. "No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out, nor can he set

up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim. The rule is expressed in the maxims 'Ex dolo malo non oritur actio' and 'In pari delicto potior est conditio defendentis.' The law, in short, will not aid either party to an illegal agreement. It leaves the parties where it finds them. Therefore neither a court of law nor a court of equity will aid the one to enforce it, or give damage for the breach of it, or set it aside at the suit of the other, or, when the agreement has been executed in whole or in part by the payment of money or the transfer of property, lend its aid to recover it back." 9 Cyc. 546, (C), and citations in note.

The rule is so well established and known as to have become elementary. But there are some exceptions to the rule, generally grouped by the text-writers into five heads (1) When public policy requires the intervention of laws. Here public policy requires no such intervention. (2) Where the parties are not in pari delicto. Here they are in equal fault. (3) When the law which makes the agreement unlawful was intended for the special protection of the party seeking relief. Here the party seeking relief is a white man pressing this suit to enforce an illegal contract against a citizen of an Indian tribe for whose benefit the statute was enacted. (4) Where the illegal purpose has not been consummated. Here the very purpose of the bill is to consummate the illegal purpose. And (5) where the party complaining can exhibit his case without relying upon the illegal transaction. Here the very foundation of the suit is the illegal contract. We are of the opinion that the court did not err in refusing specific performance.

It is further argued that, as the plaintiff paid one-half of the $600 to get the title into the defendant, if the court cannot enforce specific performance, it ought, under the prayer of the bill for general relief, to decree a repayment of the sum of $300 to the plaintiff. But, as that sum was paid as a part of the consideration of the illegal agreement and in furtherance

of the scheme to unlawfully get title to the land, under the law as above stated it cannot be recovered. And the same is true with regard to the indebtedness growing out of the lease; that is, if the lease were a part and parcel of this contract and scheme to get title to the land, or to hold it until title could be procured, it is then tainted with the illegality, and a part of it, and, if not, it is then an independent contract and transaction, for which an action at law would lie, and has no place in this equitable action. While a prayer for general relief to a bill in equity will justify the court in reaching out and taking hold of and adjudicating all of the matters belonging to, connected with, or growing out of the transaction sued upon it, cannot take jurisdiction of other independent transactions between the parties, actionable at law; and therefore, in either case, whether it be a part of the illegal transaction or an independent and separate one, no recovery can be had in this suit.

Finding no error in the proceedings of the court below, the decree is confirmed.

GILL, C. J., and TOWNSEND and LAWRENCE, JJ., concur.