MᶜLAUGHLIN v. ARDMORE LOAN & TRUST CO.

No. 776, Ind. T.   Opinion Filed May 14, 1908.

(95 Pac. 779.)

**BILLS AND NOTES—Illegal Consideration—Deed to Indian Land.** In a suit on a promissory note, where the proof shows the consideration thereof to be a deed of land from the payee to the payor, in possession of the payee, and held by him in violation of Act Congress July 1, 1902, chapter 1362, 32 Stat. 641, and that the transaction was in violation of Rev. St. U. S. section 2118, discloses an illegal consideration, and a motion to direct a verdict in favor of defendant was properly sustained.

(Syllabus by the Court.)

*Error from the United States Court for the Southern District of the Indian Territory, at Ardmore; before Hosea Townsend, Judge.*

Action by E. C. McLaughlin against the Ardmore Loan & Trust Company.   Judgment for defendant, and plaintiff brings error.   Affirmed.

On January 28, 1904, E. C. McLaughlin, plaintiff in error, plaintiff below, sued Ardmore Loan & Trust Company, a corporation, defendant in error, defendant below, in the United States Court in the Indian Territory, Southern District, at Ardmore, on a certain promissory note as follows:

"Ardmore, Ind. T., Oct. 12, 1903.   January 1st, 1903, without grace, for value received, I, we or either of us, promise to pay to the order of E. C. McLaughlin, at their office at Ardmore, Indian Territory, seven hundred and fifty dollars ($750.00), with interest at the rate or eight per cent. per annum from maturity until paid, and ten per cent. additional on the principal and interest unpaid for attorney's fees, if placed in the hands of an attorney for collection.   This note is given for 330 acres of land evidenced by deed of this date, said land to be delivered to us on January 1st, 1904, free of all incumbrances, otherwise this note

is void. Ardmore Loan & Trust Company, by S. M. Torbett, Secretary and Treasurer."

Plaintiff alleged "that prior to the 1st day of January, 1904, the said 330 acres of land was delivered to defendant in accordance with said stipulation, and in accordance with said deed mentioned in said note." The complaint further alleges "that plaintiff executed said conveyance to defendant, quitclaiming to it as trustee and for the use and benefit of some person, Choctaw or Chickasaw, entitled to allot same according to the treaties between the United States and the Choctaw and Chickasaw tribe or nation of Indians, and surrendered the possession to the defendant as trustee." This latter allegation was specifically denied by defendant in its answer, and, as there is no proof to support it, the same may be considered as eliminated from this case. Defendant in effect pleaded failure of consideration. At the close of the testimony on both sides the court instructed the jury to return a verdict for defendant, which was done, and exceptions noted, and from the judgment of the court on the verdict plaintiff appealed to the United States Court of Appeals for the Indian Territory, and the case is now before us for review.

*Johnson & Dolman* and *T. L. Wright,* for plaintiff in error.
*Cruce, Cruce & Blakemore,* for defendant in error.

TURNER, J. (after stating the facts as above). The only assignment of error necessary for us to consider is that the court erred in sustaining defendant's motion to direct a verdict in its favor. The proof discloses that at the time of the execution of the note in controversy plaintiff in error was a Choctaw citizen, living at Ardmore, Ind. T., the father of three children, all living with him, all duly enrolled, and as such were each entitled to an allotment upon the public domain of the Choctaw Nation; that, being in possession of more in value than that of 320 acres of average allotable land in said nation than he could hold for himself and his three children, he, on the day the note sued on bears date, entered into a contract with Ardmore Loan & Trust Com-

pany, defendant in error, for the sale of 330 acres of said land thus held in excess by him. At that time there were some improvements on the land, such as fencing and houses, but their value does not appear; neither were they mentioned in the trade. The consideration to be paid for said land was $750, and was evidenced by the note sued on. At the time of its execution and delivery a deed to the land was made, executed, and delivered by the payee to the payor, and the latter placed in possession of the land, which it has since retained.

The question for us to determine is whether there appears in this transaction such a consideration as will support an express promise to pay. By virtue of the terms of Act Cong. July 1, 1902, c. 1362, § 19, 32 Stat. 643, ratified September 25, 1902, plaintiff in error lost the right of possession of the lands attempted to be conveyed to defendant in error, the price of which furnished the consideration of the note sued on. By that act such right of possession went back into the tribe by operation of law. It follows that at the time of this transaction the payee had nothing in these lands which he could convey to a citizen of the Choctaw Nation, much less a citizen of the United States, or to a corporation organized under its laws, such as is defendant in error. *Turner v. Gilliland,* 4 Ind. T. 606. 76 S. W. 253; *Ikard v. Minter,* 4 Ind. T. 214, 69 S. W. 852; *Holford v. James,* 4 Ind. T. 636, 76 S. W. 263. But the entire object of this transaction was to enable Ardmore Loan & Trust Company to make a settlement on lands granted by treaty with the United States to an Indian tribe This was in clear violation of Rev. St. § 2118, which reads:

"Every person who makes a settlement on any lands belonging, secured or granted by treaty with the United States to any Indian tribe, or surveys or attempts to survey such lands, or to designate any of the boundaries by marking trees, or otherwise, is liable to a penalty of one thousand dollars. The President may, moreover, take measures and employ such military force as (he) may judge necessary to remove any such person from the lands."

In *Denton v. Capital Town Site Company,* 5 Ind. T. 396, 82 S. W. 852, the court says:

"But this court never at any time has said nor is there any provision of law whereby a member of one of the tribes can sell to a United States citizen the possession or right of any of the tribal lands. The complaint in this action alleges directly a sale from a member of the Creek Nation to them of the lands sought to be recovered in this action—something that is positively inhibited by the statutes. * * * The Indian could not sell these lands, or the right to these lands, and could not convey the same, nor contract to do so. In this case the allegations of the complaint do not show that Mrs. Baysinger held these lands as a part of her allottable portion in the Creek Nation. If these lands at the date of this conveyance were not in her possession as her allottable portion thereof, she would be unable to transfer them even to another Creek citizen. If she could not transfer them to another Creek citizen, she certainly could not transfer them to a United States citizen, nor could she put another United States citizen in legal possession of them."

*Swanger v. Mayberry,* 59 Cal. 91, was a suit on two promissory notes given in part payment for the purchase money for growing timber on public land of which plaintiff had neither possession nor title, but in which he claimed "a possessory right," and as such "sold and conveyed to defendant all his right, title, and interest * * * *" therein. The court said:

"Being given for the privilege of cutting down timber growing upon the public lands of the United States, the notes were given for an illegal consideration. It is made a penal offense by act of Congress, passed March 2, 1831, to cut down timber upon any of the public lands of the United States with intent to export, dispose of, use, or employ the same in any manner whatsoever other than the use of the navy of the United States, and the offense is punishable by fine and imprisonment. Rev. St. U. S. § 2461 (U. S. Comp. St. 1901, p. 1527). * * * Under the act of Congress, even if the plaintiff had been in possession of the land as a settler without proprietary rights in it, it would have been unlawful for him to cut down the timber growing upon it for the purpose of spoliation or traffic; and it would be equally unlawful for him to contract with another to do what the law prohibited him from doing, for what the law directly prohibits a man from doing cannot be done by indirect means. And being an act forbidden by law, a contract founded upon it is invalid,

and cannot be made the subject-matter of an action. The general principle is well established that a contract founded on an illegal consideration, or which is made for the purpose of furthering any matter or thing prohibited by statute, or to aid or assist any party therein, is void. This rule applied to every contract which is founded on a transaction *malum in se,* or which is prohibited by statute, on the ground of public policy. *Ladda v. Hawley,* 57 Cal. 51; *Warren v. Manufacturer's Ins. Co.,* 13 Pick. 521; s. c. 25 Am. Dec. 341; *Holt v. Green,* 73 Pa. 198, 13 Am. Rep. 737; *Woods v. Armstrong,* 54 Ala. 150, 25 Am. Rep. 671."

It follows that, as this contract had for its object the violation of law, it is illegal, and cannot be enforced, and that the court did not err in directing the jury to return a verdict in favor of the defendants. 15 Am. & Eng. Enc. of Law, 935, and cases cited.

The judgment of the lower court is affirmed.

All the Justices concur.