McWILLIAMS INV. CO. v. LIVINGSTON *et al.*

No. 852, Ind. T.    Opinion Filed December 21, 1908.

(98 Pac. 914.)

INDIANS—Deed by Allottee—Validity. In a case where a Creek citizen not of Indian blood made, executed, and delivered a deed to a portion of his allotment in January, 1905, which was prior to the date on which the deed of the principal chief was executed and delivered to said allottee, such first deed is not to be held invalid on this account, but the subsequently acquired legal estate on receipt passed immediately to such allottee's grantee.

(Syllabus by the Court.)

*Appeal from the United States Court for the Western District of the Indian Territory; William R. Lawrence, Judge.*

Action by the McWilliams Investment Company against A. H. Livingston and others. Judgment for defendants. Plaintiff appeals. Reversed and remanded.

*William T. Hutchings, George A. Murphey,* and *William P. Z. German,* for appellant.

*C. L. Thomas* and *Edgar A. De Meules,* for appellees.

Dunn, J.  The appellant, as plaintiff, filed its complaint in the United States Court for the Western District of the Indian Territory, sitting at Muskogee, on the 26th day of July, 1906, alleging: That it was a corporation duly organized and existing under and by virtue of the laws of the United States in force in the Indian Territory.  That it was the owner of the N. E. ¼ of the S. E. ¼ of section 33, township 18 N., range 13 E., and derived its title by and through a general warranty deed made January 24, 1905, by James Bristor; the same being a part of his allotment as a Creek citizen, not of Indian blood, and a deed having been issued to him on March 8, 1905, by the principal chief of the Creek Nation, as provided by law.  That A. J. Livingston, the appellee, derived his title by and through a deed made, executed, and delivered by the said Bristor, on January 30, 1906, conveying the same land.  On motion, others were made parties to the suit, but for the determination of the question before us  it will not be necessary to notice them.  To this complaint a general demurrer was filed on the ground that the facts alleged were not sufficient to constitute a cause of action.  This demurrer was by the court sustained, from which action plaintiff appealed to the United States Court of Appeals of the Indian Territory, and the cause is before us for our consideration by virtue of our succession.

There is but one question presented for our consideration, which is, at what time does such a title in land vest in a citizen under the statutes of the United States and agreements made with the Creek Tribe of Indians as will enable such citizen to make conveyance and grant a good title to his allotment?  Such a comprehensive view of the antecedent history of the laws and treaties relating to the allotment of the lands of the Creek Nation is taken in an opinion of this court prepared by Justice Hayes that it will be unnecessary to review the same here.  The title of the case in

which the same appears is *Western Investment Company v. Tiger*, 21 Okla. 630, 96 Pac. 602. The particular question involved here, however, was not involved in that case. Hence it will be necessary to briefly mention and consider portions of several different federal acts in order to fully present the question here to be considered.

Section 11 of an Act of Congress of June 28, 1898 (30 Stat. 497, c. 517; Kappler's Indian Affairs & Treaties, p. 92), provides that, when the roll of citizenship and the survey of lands of either of the five civilized nations or tribes is completed, the Dawes Commission shall proceed to allot the exclusive use and occupancy of the surface of all the lands of said nation or tribe among the citizens thereof; provides, further, that, when it shall appear that any member of the tribe is in possession of lands, his allotment may be made out of the land in his possession, and that the land so allotted shall be nontransferable until after full title is acquired. Thereafter, and on March 1, 1901, Congress passed an act, entitled "An act to ratify and confirm an agreement with the Muskogee or Creek Tribe of Indians, and for other purposes." 31 Stat. 861, c. 676; 1 Kappler's Indian Affairs, Laws & Treaties, 729-735. Section 23 of this act provides as follows:

"Immediately after the ratification of this agreement by Congress and the tribe, the Secretary of the Interior shall furnish the principal chief with blank deeds necessary for all conveyances herein provided for, and the principal chief shall thereupon proceed to execute in due form and deliver to each citizen who has selected or may hereafter select his allotment, which is not contested, a deed conveying to him all right, title, and interest of the Creek Nation and of all other citizens in and to the lands embraced in his allotment certificate, and such other lands as may have been selected by him for equalization of his allotment. All conveyances shall be approved by the Secretary of the Interior, which shall serve as a relinquishment to the grantee of all the right, title, and interest of the United States in and to the lands embraced in his deed. Any allottee accepting such deed shall be deemed to assent to the allotment and conveyance of all the lands of the tribe, as provided herein, and as a relinquishment of all his right, title and interest

in and to the same, except in the proceeds of lands reserved from allotment."

June 30, 1902, Congress passed an act, entitled "An act to ratify and confirm a supplemental agreement with the Creek Tribe of Indians, and for other purposes." 32 Stat. 500, c. 1323; Kappler's Indian Affairs, Laws & Treaties, 761. Section 16 of this enactment provides:

"Lands allotted to citizens shall not in any manner whatever or at any time be encumbered, taken, or sold to secure or satisfy any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior."

April 21, 1904 (33 Stat. 189-204, c. 1402), Congress passed an act relieving certain of the allottees of the foregoing restriction, entitled "An act making appropriations for the current and contingent expenses of the Indian Department and for fulfilling treaty stipulations with various Indian tribes for the fiscal year ending June 30th, 1905, and for other purposes." The material provision of which reads as follows:

"And all of the restrictions upon the alienation of lands of allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed, and all restrictions upon the alienation of all other allottees of said tribes, except minors, and except as to homesteads, may, with the approval of the Secretary of the Interior, be removed under such rules and regulations as the Secretary of the Interior may prescribe."

It will be observed that the deed from the Creek Nation to the allottee in this case was made on March 8, 1905, and it is the contention of counsel for appellee that, until this deed was executed and delivered, the grantor was not an allottee, and that the land which he conveyed was not a part of his allotment as a citizen of the Creek Nation. It is not contended that the tract conveyed was the homestead, or that the grantor was a minor, but that he was not an allottee prior to the issuance and delivery to him of

the deed to the land, and that prior to that time he had no power to convey the same. With this contention we are not able to agree. Section 23, *supra*, it will be observed, provides that, after the ratification of the agreement mentioned, the principal chief of the nation should be by the Secretary of the Interior supplied with blank deeds necessary for all conveyances, and that he should proceed to execute in due form and deliver to each citizen a deed conveying to him the right, title, and interest of the Creek Nation, and of all other citizens, in the land embraced in the allotment certificate. In some of the treaties with the other tribes of the Indian Territory, it is provided that the Commission of the Five Civilized Tribes should issue to the citizens, after they had selected their allotments, certificates which should be evidence of the right of the allottees to the land. We do not find any such provision to have been made in the agreement or laws between the United States and the Creek Nation, but that it was clearly contemplated that a certificate evidencing an allotment right should be issued is made manifest by the first paragraph of section 25, *supra*. We are not advised as to the practice obtaining in reference to these certificates, whether in fact any were issued or not, nor do we regard this as very material or controlling in the case, for in our judgment the date of the right to alienate or transfer on the part of the allottee, subsequent to April 21, 1904, related solely to the time when such allottee actually made or selected his allotment, and when he had done the things necessary to secure an equitable interest or title therein, entitling him to the patent. The rule in such a case is stated by the Supreme Court of the United States in the case of *Stark v. Starr,* 6 Wall. 418, 18 L. Ed. 925, as follows: "The right to a patent once vested is treated by the government, when dealing with the public lands, as equivalent to a patent issued." There are many other cases supporting this doctrine. *Wirth v. Branson,* 98 U. S. 118, 25 L. Ed. 86; *Landes v. Brandt,* 10 How. 384, 13 L. Ed. 449; *Carroll v. Safford,* 3 How. 441, 11 L. Ed. 671; *Witherspoon v. Duncan,* 71 U. S. 210, 18 L. Ed. 339; *Barney v.*

*Dolph,* 97 U. S. 652, 24 L. Ed. 1063; *Simmons v. Wagner,* 101 U. S. 260, 25 L. Ed. 910; 26 Am. & Eng. Ency. of Law, p. 403. The same principle is declared, with numerous cases cited to support it, in an opinion prepared by Chief Justice Williams of this court, being *Godfrey v. Iowa Land & Trust Company,* 21 Okla. 293, 95 Pac. 792, wherein the leading cases are collated.

The petition in this case reads that the land was conveyed by "James Bristor on January 24, 1905, by a general warranty deed; the same being a part of his allotment as a Creek citizen, not of Indian blood," and the act of April 21, 1904, removed all the restrictions upon the alienation of lands of such allottees. In our judgment the deed executed by the allottee of his allotment, relied upon by the plaintiff herein, conveyed all the interest the grantor possessed in his allotment at the time it was executed and delivered. Section 19 of an act of Congress passed April 26, 1906, provides that:

"Conveyances heretofore made by members of any of the Five Civilized Tribes subsequent to the election of allotment and subsequent to the removal of restriction, where patents thereafter issue, shall not be deemed or held invalid solely because said conveyances were made prior to issuance and recording or delivery of patent or deed; but this shall not be held or construed as affecting the validity or invalidity of any such conveyance, except as hereinabove provided." (34 Stat. vol. 1, p. 144, c. 1876.)

This act of Congress, in our judgment, amounts simply to a declaration or exposition of the law as it was prior to its passage. No other conclusion, it seems to us, can be derived from the plain import of its terms. The deed which was made by Bristor in this case was, as is shown by the complaint, "a part of his allotment." Hence in our judgment we may reasonably infer that such allotment had been selected, as it could not have been a part of his allotment unless either he had selected it, or it had been selected for him, and, in either event, as it was his allotment, the deed executed was subsequent to its selection. The deed was likewise made subsequent to the removal of restrictions on its alienation,

and patent issued thereafter to him for the land, and Congress has said in the act last cited that this deed shall not be deemed or held invalid solely because said conveyance was made prior to the issuance and recording or delivery of patent or deed.

In this case this is the only question raised and urged by the parties, and the conclusion to which we have come demands a reversal of the judgment of the district court, which is accordingly done, and the cause remanded for further proceeding under the law as herein declared.

All the Justices concur.