## HOWARD *et al.* v. FARRAR.

No. 734.   Opinion Filed March 21, 1911.

(114 Pac. 695.)

1. **APPEAL AND ERROR—Review—Verdict.** Where there is entire lack of evidence to sustain any material issue found by a general verdict, such verdict will be set aside and a new trial granted.

2. **INDIANS—Alienation of Land—Illegal Contracts—Indemnity Notes.** By reason of Act Cong. June 28. 1898, c. 517, sec. 29, 30 Stat. p. 507, and by Act Cong. July 1, 1902, c. 1362, 32 Stat. p. 642, a sale by a full-blood Choctaw Indian to a white man of a portion of her allotment before the removal of restrictions upon her power to alienate and an agreement to convey same when her restrictions are removed is void; and notes executed by such Indian to the purchaser for the purpose of indemnifying him against loss in the event she fails to convey said land after her restrictions are removed are also void; and recovery thereon cannot be had, although the purchaser paid the purchase price of the land at the time of the agreement of sale.

(Syllabus by the Court.)

*Error from Choctaw County Court; W. T. Glenn, Judge.*

Action by W. E. Farrar, administrator of Etta Thompson, against W. H. Howard and others. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

*Geo. W. Richardson,* for plaintiffs in error.

*Spriggs & Greene,* for defendant in error.

HAYES, J. This action was brought in the court below by defendant in error to recover on two certain promissory notes, executed by plaintiffs in error. Plaintiffs in error, hereafter called defendants, in their answer set up three defenses: First. General denial. Second. Payment. Third. That the notes were based upon an illegal consideration and made in violation of the law and against public policy. Their answer was unverified, and therefore was ineffective for the purpose of denying the execution of the notes. The notes were executed on September 24, 1903, by defendant Rhoda Howard as principal and by defendants W. H. and J. W. Howard as her sureties; one being for the sum of $150 and the other for the sum of $50, and both payable 12 months after date, with interest. The facts alleged in the answer as constituting the defense that the notes were given upon an illegal consideration or in violation of law are that Rhoda Howard is a member of the Choctaw Tribe of Indians; that she has taken her allotment as such; and that at the time of the execution of the notes she entered into a contract with Don Thompson, the husband of Etta Thompson, of whose estate defendant in error, hereafter called plaintiff, is administrator, by which she sold to Don Thompson 40 acres of her surplus allotment, from which restrictions upon her power to alienate had not been at that time and have not been since removed. Thompson paid her for the land the sum of $200 in cash, and she executed to him the notes in controversy, and the same were signed by her codefendants as sureties, with the agreement that said notes should indemnify Thompson against any loss he might sustain from her failure to carry out her contract to convey the land when her restrictions

should be removed. The trial in the court below resulted in a verdict and judgment in favor of plaintiff for the amount of the notes, including interest.

To reverse that judgment in this proceeding, defendants assign as error the refusal of the court to grant them a new trial, upon the ground that the verdict is contrary to the law and the evidence, and the giving of a certain instruction. The sale by Rhoda Howard of her land constituting part of her allotment to Thompson was in violation of the law. Section 29, c. 517, of Act of Congress June 28, 1898 (known as the "Curtis Bill") 30 U. S. Stat. at L. p. 507, provides:

"That all contracts looking to the sale or incumbrance in any way of the land of an allottee, except the sale heretofore provided, shall be null and void."

And the Act of July 1, 1902, c. 1362, to ratify and confirm an agreement with the Choctaws and Chickasaws (32 U. S. Stat. at L. p. 642), provides:

"Lands allotted to members and freedmen shall not be affected or incumbered by any deed, debt or obligation of any character contracted prior to the time at which said land may be alienated under this act; nor shall said land be sold except as herein provided."

No reply was filed by plaintiff to defendants' answer. The defense of illegality of the contract set up in the answer was new matter, and would not have been available as a defense upon a general denial, and could be made a defense only by a special plea. *Dillon v. Darst,* 48 Neb. 803, 67 N. W. 783; *Durham v. Pagett,* 39 S. C. 69, 17 S. E. 563; *Barger v. Farnham,* 130 Mich. 487, 90 N. W. 281; *Lyts v. Keevey,* 5 Wash. 606, 32 Pac. 534; *Milbank v. Jones,* 127 N. Y. 370, 28 N. E. 31, 24 Am. St. Rep. 454.

Plaintiff's failure to file any reply controverting therein the allegations of the answer setting up the illegality of the contract operates as an admission of the facts alleged relative thereto. Section 4332, Wilson's Rev. & Ann. St. 1903. There was, however, no motion for a judgment on the pleadings, and at the trial defendants introduced evidence to sustain this defense, and their

evidence sustains the allegations of the answer, and the same is not controverted by any evidence whatever on the part of plaintiff.

The court, without objection, gave the jury three instructions bearing upon this defense. By one of these instructions the jury was told that if they should find from the testimony in the case that the notes sued upon were contracts looking to the sale of Indian land, and were made before the restrictions had been removed from same, in that event the notes were made in violation of the law and against public policy and therefore void; and the verdict should be in favor of defendants. By another of said instructions the jury was told that if they should find from the testimony that the notes were given by defendants as a guaranty on their part that Rhoda Howard would convey to said Thompson certain real estate when title thereto was acquired when she was permitted under the law, and if they should further find that Rhoda Howard, who was to convey said land, was an Indian citizen, and that the restrictions upon her land had not been removed, in that event, this suit is premature, and their verdict should be for the defendants. Under both of these instructions and the issues formed by the pleadings and the uncontradicted evidence, the verdict should have been for defendants. In order for the jury to return the verdict it did return, it was necessary for them to find that the notes sued upon were not given to Thompson as a part of the transaction between him and Rhoda Howard for the purchase of the part of her allotment to indemnify him against any loss in the event Rhoda Howard failed to carry out her part of the contract by executing to him a deed for the land when her restrictions upon alienation were removed; but the contrary of such finding is admitted by the pleadings and established by all the evidence. Appellate courts set aside with reluctance the verdict of a jury that has been approved by the trial court; but, where there is an entire lack of evidence to sustain any material issue found by the verdict, such verdict will be set aside and a new trial granted. *Puls v. Casey*, 18 Okla. 142, 92 Pac. 388; *Meierholtz v. Territory*, 14 Okla. 359, 78 Pac. 90. It is probable

that the jury was controlled in returning the verdict by an instruction urged in this proceeding as reversible error, which is as follows:

"If you find these instruments sued upon, two promissory notes signed jointly and severally by the defendants W. H. Howard, Rhoda Howard, and J. W. Howard for the sum of $50 and $100, respectively, and the burden of proof of payment of aforesaid notes devolves upon defendants; and unless the jury finds from the testimony that the aforesaid notes have been paid by said defendants or their representatives, you will find for the plaintiff in such sum or sums as the evidence shows the plaintiff entitled to recover."

The giving of this instruction, under the state of the issues formed by the pleadings and the evidence, was error. The jury should have been told in the event they found that said notes had not been executed as a part of the transaction for the conveyance of the lands of Rhoda Howard upon which her restrictions to alienate had not been removed, then the burden of proof of payment devolved upon them; and, unless the jury found that the notes had been paid, they should find for plaintiff.

The nature and purpose of the transaction between Thompson and defendants is apparent, both from the facts stated in the answer and from the evidence. He and defendant Rhoda Howard were attempting to do that which the law says they shall not do, to wit, contract for conveyance of a part of an allotment of a Choctaw Indian before removal of restrictions. She could not give a valid deed at the time she contracted to convey; nor could she contract to do so, when the law in the future authorized her to convey. In order to circumvent the law and compel the allottee to do that which the law does not authorize or compel her to do, the notes were executed and the agreement relative thereto was entered into for the purpose of binding Rhoda Howard and her sureties to protect Thompson from loss in the event she did not carry out the illegal contract. It is a well-settled principle of law that the courts will not aid a party to enforce an agreement made in furtherance of objects forbidden by the statute, or by

common law or general policy of the law, or to recover damages for its breach, or when the agreement has been executed in whole or in part by payment of money to recover it back.   9 Cyc. 546. There are some exceptions to this rule, but this case falls within none of them.

A somewhat similar question was before the court in *Sayer v. Brown,* 7 Ind. T. 675, 104 S. W. 877.   In that case, there was a contract between a white man and an Indian citizen executed before the removal of restrictions for the conveyance of a portion of the Indian's allotment on which a part of the consideration had been paid by the white man.   The action was for specific performance, and, in the event the court could not enforce specific performance, there was prayer for a decree adjudging the white man, Sayer, repayment of the sum he had paid to the Indian citizen on the contract.   The court, after refusing decree of specific performance, in refusing judgment for repayment of the consideration paid, said:

"But, as that sum was paid as a part of the consideration of the illegal agreement and in furtherance of the scheme to unlawfully get title to the land, under the law as above stated, it cannot be recovered.   And the same is true with regard to the indebtedness growing out of the lease; that is, if the lease were a part and parcel of this contract and scheme to get title to the land, or to hold it until title could be procured, it is then tainted with the illegality, and part of it.   *   *   * "

It is also well settled that parol evidence is admissible to show that the consideration of a contract was illegal, or that it was made in furtherance of objects forbidden by the statute, by the common law, or general policy of the law.   Upon this question in *Robertson v. Robinson,* 65 Ala. 610, 39 Am. Rep. 17, it is said:

"All contracts or agreements having for their object that which is repugnant to public justice, or violative of public policy, or offensive to good morals, or contrary to statutory provisions, or in derogation of the principles of the common law relating to the public peace or security, and injurious to the community, are void.   *   *   *   Whether this is the real character of the agreement (i. e., whether it violates any of the principles just stated)

and, if it be, whether it is offensive to law, and violative of public policy, requires that the whole transaction should be inquired into and considered. The form of the agreement and the expressions embodied in the writing to which it was reduced are only matters of evidence not operating an estoppel upon the parties, and not embarrassing or hindering the court. If it were otherwise, if the manner of the transaction could gild over and conceal the truth, this great conservative principle of the law, essential to the purity of the administration of justice, of public morals and the general welfare, would be evaded at the pleasure of the designing, the wicked and the corrupt."

The judgment of the trial court is reversed and the case remanded.

TURNER, C. J., and DUNN and KANE, JJ., concur; WILLIAMS, J., not participating.