## LYNCH *et al.* v. FRANKLIN.

No. 2906.    Opinion Filed February 18, 1913.

(130 Pac. 599.)

1. **DEEDS—Indians — Indian Lands — Conveyance—After-acquired Title.** On October 16, 1905, Emmer Sisney made and entered into a contract with A. & F., a firm of lawyers, whereby she agreed to pay them the sum of $1,500 for their services in prosecuting her claim for enrollment by inter-marriage in the Choctaw Tribe .of Indians. She also on the same date made them a warranty deed to "all of my alienable land, commonly known as surplus lands, being the entire amount of land to which I am entitled in the Choctaw and Chickasaw Nations, as ·a member of the Choctaw Tribe of Indians, by inter-marriage, exclusive of homestead." She also at the same time contracted to make them a subsequent deed, in lieu of and as a complement to said deed, as soon as she was enrolled, no matter when, or where, said land should be allotted. At the time she was not a member of said tribe, her claims to citizenship having been repudiated. She was not in possession of any land, nor had she selected any as an allotment. On November 26, 1906, she was enrolled as a citizen of said nation by inter-marriage, and on December 12th she was allotted certain lands which on December 14th she conveyed by warranty deed to plaintiffs in error. F., having purchased A.'s interest in the contract, and the land conveyed by the first deed brings suit to quiet title against Sisney's deed, brings suit to quiet title against Sisney's last grantees.    Held:

(a) She not having been enrolled as a member of the tribe, and not being in possession af any land, and not having selected any allotment, the contract and deed of October 16, 1905, were void, and operated to pass no title whatever to the grantees therein named.

(b) The Act of Congress of April 21, 1904 (chapter 1402, 33 St. at L. 204), removing restrictions of allottees of the Five Civilized Tribes did not apply to the grantor named in said deed for that she was not an allottee, nor had the land at that time been allotted.

(c) Said contract and deed being prohibited by the laws of the tribe, treaties, and the laws of the United States were therefore insufficient to pass the subsequently acquired title to said property.

(d) The "doctrine of relation" as found in section 642, Mansf. Dig. of Ark., cannot be invoked in this case, for it was not only necessary to pass title to subsequently acquired property that the contract at the time of its execution must be valid, but also the property sought to be conveyed must be alienable, and the grantor must have the right to execute the same, none of which conditions existed in this case.

2.   INDIANS—Lands—"Allottee"—"Allotment." An "allottee," as the word is used in the Act of April 21, 1904 (chapter 1402, 33 St. at L. 189-204), is one, generally an Indian, freedman, or adopted citizen of a tribe of Indians, to whom a tract of land out of a common holding has been given by, or under the supervision of, the United States, while an "allotment," is the tract of land thus set aside for and awarded to an allottee.

(Syllabus by Robertson, C.)

*Error from District Court, McClain County;*
*R. McMillan, Judge.*

Action by Wirt Franklin against C. S. Lynch and another to cancel a deed and quiet title. Judgment for plaintiff, and defendants bring error. Reversed, and cause dismissed.

This controversy involves the title to 110 acres of land located in section 34, township 9 N., range 4 W., in McClain county, Okla.

The facts, as stated in the petition, are as follows: On October 16, 1905, Emmer Sisney was asserting her right to membership in the Choctaw Tribe of Indians by intermarriage. This right was denied by the Choctaw Nation, and her citizenship claim was repudiated. She was not in possession of any lands in either the Choctaw or Chickasaw Nations. On the date above named she entered into a contract with Apple & Franklin, a firm of lawyers, by which she employed them to represent her in her application for enrollment as a citizen of the Choctaw Nation, and agreed to pay them $1,500 for their services, and as a part of the contract of said employment she agreed to execute a good and sufficient warranty deed to her entire surplus or alienable portion of her allotment in case she was allotted, wherever selected, or filed upon, and as soon as the selection was made after final enrollment. She also at the same time executed an instrument purporting to be a warranty deed to S. A. Apple and Wirt Franklin to lands described as follows:

"All of my alienable land, commonly known as surplus lands, being the entire amount of land to which I am entitled in the Choctaw and Chickasaw Nations, as a member of the

Choctaw Tribe of Indians by intermarriage, exclusive of homestead."

She also promised at the same time to make and deliver a good and sufficient warranty deed, to the said Apple & Franklin in lieu of and as a complement to this deed. Thereafter Apple and his wife, by warranty deed, conveyed whatever interest they may have had in said land to Wirt Franklin, and the contract of employment and this purported deed constitutes the title of the plaintiff in error. This deed from Sisney to Apple & Franklin was filed for record December 13, 1906.

Emmer Sisney was enrolled as a member of the Choctaw Tribe of Indians by intermarriage, and such enrollment approved by the Secretary of Interior on November 26, 1906, and the land in controversy allotted to her on December 12, 1906, and certificate and patent were thereafter issued to her. On December 14, 1906, she conveyed said lands to C. S. Lynch and O. A. Simmons, the plaintiffs in error, by warranty deed, for a consideration of $1,500, which deed was recorded on December 19, 1906. The original contract of employment, the various deeds, hereinabove mentioned, together with an affidavit by S. A. Apple that Emmer Sisney selected the lands in controversy as her surplus allotment on December 12, 1906, are all attached to and made a part of the petition. Defendants filed a general and special demurrer to the petition on the grounds that, first, said petition does not state facts sufficient to constitute a cause of action; second, said petition discloses upon the face thereof that the conveyance under which plaintiff claims was made prior to the enrollment of Emmer Sisney and prior to the selection of said land in allotment and at a time when said lands were not alienable, and at a time when the contract to convey the same was void, as being a violation of the Choctaw-Chickasaw Supplemental Agreement, and previous treaties and agreements between the said Nations and the United States, and the various laws of the United States; and, third, because it appears from said petition and the exhibits thereto attached and made a part thereof that said pretended conveyance

was made prior to the selection of said land in allotment, and could amount to nothing more than a selling of an individual interest in tribal lands; the making of which was prohibited by the laws of the United States and the treaties and agreements of said tribes. The demurrer was overruled, and the defendants elected to stand upon the same. Judgment was rendered in favor of the plaintiff, and canceling the deed to the defendants, as a cloud upon the title of the plaintiff Franklin. Exception was duly taken to the ruling and judgment of the court, and time allowed in which to prepare and serve a case-made.

*Cottingham & Bledsoe,* for plaintiffs in error.
*Hugh A. Ledbetter,* for defendant in error.

Opinion by ROBERTSON, C. (after stating the facts as above.) Plaintiffs in error rely upon the following assignment of error, viz.:

"The lands in controversy not being in possession of Emmer Sisney, and she not having been enrolled as a member of the tribe, and not having selected the lands in allotment at the time of the execution of the contract of employment, and purported conveyance, on October 16, 1905, the same is void, and operated to pass no title whatever to the grantee therein, and judgment therefore should have been for defendants below."

If this contention is correct, the judgment of the trial court is wrong, and must be reversed. Defendant in error insists, however, that this conveyance made on October 16, 1905, was valid, and cites Act Cong. April 21, 1904, c. 1402, 33 St. at L. 204, which, among other things, provides:

"And all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed; * * * "

—and that this conveyance was made under and by virtue of chapter 27, Mansf. Dig. of Ark., which was put in force in the Indian Territory February 19, 1903 (Act. Feb. 19, 1903, c. 707, 35 St. at L. 841; 10 Fed. St. Ann. 130). Plaintiffs in error,

however, contend that this provision is not applicable to the case at bar, for that such statute had reference only to "allottees," and that Emmer Sisney was not an "allottee" at that time, and that, therefore, such provision does not apply to her, and also that said statute applied only to lands that had in fact been "allotted," neither of which conditions existed in this case at that time.

An "allottee," as the word is used in the statute above quoted, is one, generally an Indian, freedman, or adopted citizen of a tribe of Indians, to whom a tract of land, out of a common holding, has been given by, or under the supervision of, the United States; while an "allotment" is the tract of land thus set aside for, and awarded to, an allottee. It is and has been during all the time allotments of land in severalty to Indians have been made the policy of the government to place the individual Indian or allottee in possession of an allotment free of deeds, liens, or other incumbrances, and all attempts at alienation, before restrictions have been removed and especially before allotment, have been frowned upon and uniformly denied by the government. In this case no allotment had been selected by Emmer Sisney at the time the contract and deed were executed, nor was she an allottee. She was, in fact, not even a member of the tribe, and therefore she had no legal or equitable estate in and to any of the land in said Nations, which she could then convey. *Goat v. United States,* 224 U. S. 458, 32 Sup. Ct. 544, 56 L. Ed. 841; *Mullen v. United States,* 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834; *McLaughlin v. Ardmore Loan & Trust Co.,* 21 Okla. 173, 95 Pac. 779; *Smith & Steele v. Martin,* 28 Okla. 836, 115 Pac. 866; *Howard v. Farrar,* 28 Okla. 490, 114 Pac. 695; *Combs et al. v. Miller,* 24 Okla. 576, 103 Pac. 590; *Grilts v. Fisher,* 224 U. S. 640, 32 Sup. Ct. 580, 56 L. Ed. 928; *Stephen v. Cherokee Nation,* 174 U. S. 445, 19 Sup. Ct. 722, 43 L. Ed. 1041.

Section 11 of the Choctaw-Chickasaw Agreement (Act July 1, 1902, c. 1362, 32 St. at L. 641) reads as follows:

"There shall be allotted to each member of the Choctaw and Chickasaw Tribes as soon as practicable after the approval by the Secretary of the Interior of his enrollment provided herein, land equal in value to three hundred and twenty acres of the average allottable land of the Choctaw and Chickasaw Nations, and to each Choctaw and Chickasaw freedman, as soon as practicable after the approval by the Secretary of the Interior of his enrollment, land equal in value to forty acres of the average allottable land of the Choctaw and Chickasaw Nations; to conform, as nearly as may be, to the areas and boundaries established by the government survey, which land may be selected by each allottee so as to include his improvements."

It was held by the court in *McLaughlin v. Ardmore Loan & Trust Co.,* 21 Okla. 173, 95 Pac. 779, that section 2118, Revised Statutes of the United States, which provides a penalty for "every person who makes settlement on any lands belonging, secured or granted by treaty with the United States to any Indian Tribe," etc., applied and that a sale of such land by a member of the Choctaw Tribe of Indians, holding possession of the same in excess of that permitted by section 16, c. 1362, Act Cong. July 1, 1902, 32 St. at L. 643, to a person not a member of the tribe, was absolutely void. See, also, *Combs et al v. Miller, supra; Howard et al. v. Farrar,* 28 Okla. 490, 114 Pac. 695.

The Choctaw-Chickasaw Treaty of July 1, 1902 (32 St. at L. 641), provides:

"(15)   Lands allotted to members and freedmen shall not be affected or encumbered by any deed, debt, or obligation of any character contracted prior to the time at which said land may be alienated under this act, nor shall said lands be sold except as herein provided.

"(16)   All lands allotted to the members of said tribes, except such land as is set aside to each for a homestead as herein provided, shall be alienable after issuance of patent as follows: One-fourth in acreage in one year, one-fourth in acreage in three years, and the balance in five years; in each case from date of patent," etc.

"(19)   It shall be unlawful after ninety days after the date of the final ratification of this agreement for any member of the Choctaw or Chickasaw Tribes to enclose or hold possession in any

manner, by himself or through another, directly or indirectly, more land in value than that of three hundred and twenty acres of average allottable lands of the Choctaw and Chickasaw Nations, as provided by the terms of this agreement, either for himself or for his wife, or for each of his minor children, if members of said tribes; and any member of said tribes found in such possession of lands, or having the same in any manner enclosed after the expiration of ninety days after the date of the final ratification of this agreement, shall be deemed guilty of a misdemeanor."

In *Bledsoe v. Wortman et al.*, 35 Okla. 261 129 Pac. 841 Williams, J., speaking for the court, says:

"Said sections 14 and 15 were construed by this court in *Allen v. Oliver,* 31 Okla. 356, 121 Pac. 226, wherein it was held that: 'Under section 14 and 15 of the Cherokee Agreement, approved July 1, 1902 (Act July 1, 1902, c. 1375, 32 St. at L. 717), all lands allotted to members of the said tribe, except homesteads, were alienable in five years after issuance of patent, and not prior thereto.' This holding by this court was approved by the Eighth Circuit Court of Appeals in *Truskett et al. v. Closser,* 198 Fed. 835. Not only were non-citizens and corporations prohibited by said section 2118 of the Revised Statutes of the United States from making a settlement on any lands belonging to the Cherokee Tribe, or from surveying or attempting to survey such lands or designating any of the boundaries by marking or otherwise, independent of the performance of official duties under direction of the United States government or tribal government, but also after the passage of the Act of July 1, 1902 (32 St. at L. c. 1375, p. 716), and the expiration of 90 days from said date, it was not permissible for any member of the Cherokee Tribe to inclose or hold possession of, in any manner, by himself, or through another, directly or indirectly, more lands in value than that of 110 acres of average allottable lands of the Cherokee Nation, either for himself or his wife, or for each of his minor children, if members of said tribe; and any member of said tribe found in such possession of lands, or having the same in any manner inclosed, after the expiration of 90 days after the date of ratification of said act, he was to be deemed guilty of a misdemeanor. Obviously Jess Fulsom, a Cherokee citizen to whom the land in controversy was allotted, had no authority to alienate said land, except by virtue of said Act of April 21, 1904, removing the restrictions upon

the alienation of the lands of all allottees of either of the Five Civilized Tribes, who are not of Indian blood, except minors and except as to homesteads. The limitation or prohibition under said section 14 is that lands allotted to citizens shall not be alienated by the allottee or his heirs, and under said section 15 the grant, which also operated as a limitation or restriction against alienation to such date, is that lands allotted to members of said tribe shall be alienable in five years after issuance of patent. The restriction removed provision of said Act of April 21, 1904, c. 1402, 33 St. at L. 189, harmonizes with said sections 14 and 15, as restrictions upon the alienation of the lands of allottees and of the Five Civilized Tribes, who are not of Indian blood, except minors and as to homesteads, are removed. Prior to April 21, 1904, the lands of the Cherokee Nation were absolutely inalienable until allotted to members of said tribe. Said Act of April 21, 1904, sought to take off this restriction as to certain lands of allottees not to remove restrictions upon the distributive share of any members of the tribe, even prior to allotment. The restriction which had been imposed upon the allottees by said sections 14 and 15 was only in part removed. Such parties became allottees only after the land had been allotted to them. In *McKee v. Henry,* 201 Fed. 74, decided by the United States Circuit Court of Appeals, Eighth Circuit, at its September, 1912, term, that court said: 'The Muskogee or Creek Tribe was in the nature of a dependent nation, and, as our national public buildings belong to the nation, the citizen, while he has an interest in them, has no share in the title to them, so these lands, so far as the Indian title was concerned, belonged to the tribe as a community, and no separate ‘Indian had any title whatever severally, or as a tenant in common. No law or agreement to divide the lands in severalty had any effect to create such a title until the lands were actually allotted. All these laws contemplated that the tribe through its members would receive substantially the whole reservation in lands or money. If the right to lands was vested after enrollment and before allotment, then why was the interest of the Indians not actually vested in the remaining lands and money? Yet it was expressly held in *Gritts v. Fisher,* 224 U. S. 640 [32 Sup. Ct. 580, 56 L. Ed. 928], that the interest in the remaining lands and money was not vested, and that new participants could be added by Congress. The enrolling primarily established the right of citizenship and only incidentally conferred the right to

allotment, and until allotment was made no inheritable right vested in the individual Indian. * * *' In the opinion it is further said: 'When the allotment was made for the first time, the rights of any individual vested, and the title became vested in the one at that time fixed by the law, and it makes no difference what previous laws may have provided.' If no such interest had vested that could be inherited until after the allotment, certainly no equitable title to the land in controversy vested until allotment. It was upon the theory that an equitable estate had vested before the issuance of patent that conveyances prior to the issuance of patent were sustained. *Goat et al. v. United States, supra; Godfrey v. Iowa Land & Trust Co., supra,* [21 Okla. 293, 95 Pac. 792]; *McWilliams Inv. Co. v. Livingston et al., supra* [22 Okla. 884, 98 Pac. 914]. This holding confirms our construction of the provision from the Act of April 21, 1904, above set out. If prior to allotment the members of the tribe had no such vested interest as could be inherited, obviously Congress did not remove the restrictions against alienation so as to permit such member to alienate his land before it was allotted to him; for in the exercise of its guardianship over the Indians, it was certainly the contemplation of the federal government that in the alienation of his land he should receive a consideration therefor commensurate with its reasonable value. If by removal of restrictions he were permitted to sell his prospective allotment when 'it was a mere float * * * giving him the right to no specific property,' such a policy would not be conducive to bring about salutary results in favor of the member of the tribe, to the end that he should receive his equal share in the allotment of lands, and the same be alienated under conditions that would reasonably bring him a consideration commensurate to its reasonable value."

These cases answer fully the questions presented by the record here, for at the time the original deed was executed, to wit, October 16, 1905, Emmer Sisney had not been enrolled as a member of the tribe of Indians, and was not in possession of, nor had she selected, any land as her allotment, and for the further reason that said lands, the description of which was afterwards ascertained, had not at that time been allotted, but were owned by the tribes as common property, and the still further reason that the attempted conveyance was void because prohibited,

not only by the laws of the Choctaw and Chickasaw Nations, but also by the treaties made by the United States with said Nations, as well as the laws of the United States then in force. These facts being true, and they are not denied, it follows that the attempted conveyance of October 16, 1905, was void, and the purported conveyance to Apple & Franklin cannot be validated, ratified, or given any force or virtue by reason of "the doctrine of relation" as provided for by chapter 27, Mansf. Dig. of Ark., *supra*, for that, before such doctrine can be made to operate, it must appear that the original contract was valid or of such validity as to have conveyed the title at the time it was made, neither of which conditions, as has been seen, existed. We have carefully read the case of *Sup. Oil & Gas Co. v. Mehlin*, 25 Okla. 809, 108 Pac. 545, 138 Am. St. Rep. 942, also the case of *Gann v. Ball*, 26 Okla. 26, 110 Pac. 1067, cited by counsel for defendant in error in support of his contentions, but find that in the first the allotment was selected as provided in the Cherokee allotment agreement more than one year prior to the making of the contract sued on, and in the Gann-Ball case the validity of the contract was asserted and urged by both parties, and was not questioned in any way before the court, and that neither case, therefore, is of any value to us in the matter under consideration.

In view of the foregoing, it is apparent that the court erred in overruling the demurrer interposed in the court below. Therefore the judgment of the district court of McClain county should be reversed, and the cause dismissed.

By the Court: It is so ordered.