## WILLIAMS v. TURNBULL.

No. 7849—Opinion Filed Dec. 19, 1916.

Rehearing Denied Jan. 30, 1917.

(162 Pac. 770.)

1. **Indians—Indian Lands—Contracts—Validity.**

In a suit to enforce the collection of a promissory note, where the answer and the evidence disclose that the consideration thereof was a sale of the improvements on and possession of lands held by the promisee in violation of Act Cong. July 1, 1902, c. 1362, 32 Stat. 641, the judgment of the court denying recovery was proper, for the contract of sale was unlawful and void.

2. **Bills and Notes—Validity—Public Policy.**

Where an act is absolutely prohibited by statute or is contrary to the public policy of the state, all notes or contracts given in furtherance of said act are null and void.

(Syllabus by Hooker, C.)

Error from District Court, Garvin County; F. B. Swank, Judge.

Action by S. L. Williams against Ryan Turnbull. There was a judgment for defendant, and plaintiff brings error. Affirmed.

Blanton & Andrews, for plaintiff in error.

Garrison & McArthur, for defendant in error.

Opinion by HOOKER, C. S. L. Williams in December, 1912, filed a suit in the district court of Garvin county against Ryan Turnbull and another to recover a judgment upon a promissory note alleged to have been executed on the 1st day of April, 1909, for the sum of $854.84, due and payable one year after date. Ryan Turnbull filed an answer, which, following a general denial, asserts that the note sued upon was a renewal note executed by him to W. P. Bradley more than 90 days subsequent to the 25th day of September, 1902, and that the consideration of said note executed to Bradley was for im-

provements placed upon Indian lands situated in the Chickasaw Nation, which was then illegally held by Bradley as a member of the Choctaw-Chickasaw Tribes of Indians as being in excess of the value of 320 acres of average allottable land, which the said Bradley, his wife, or any of his minors were entitled to hold under the law as members of said tribe, and that there was no consideration for said note, and for such reason said note was void. The reply filed to said answer asserts that while the note was a renewal of a former note of Ryan Turnbull to Bradley, that the same had been indorsed by Bradley to this plaintiff, and that Bradley was liable to the plaintiff upon his indorsement upsaid note, and that the said note with the indorsement of Bradley thereon was surrendered at the time of the execution of the new note, and after said note became due suit was instituted thereon, and at the instance and request of Ryan Turnbull the suit was dismissed, and time of payment extended one year.

The issue in this case is to determine whether the original note given by Ryan Turnbull to W. P. Bradley for the improvements aforesaid constituted a contract contrary to law and void, or whether the note was merely without consideration. It seems to be agreed here that, if the note was contrary to public policy and void, the judgment of the lower court is correct.

Section 19 of an agreement between the United States and the Choctaw Indians, 32 St. at Large, p. 642, is as follows:

"It shall be unlawful after ninety days after the date of the final ratification of this agreement for any member of the Choctaw or Chickasaw Tribes to inclose or hold possession of in any manner, by himself or through another, directly or indirectly, more lands in value than that of three hundred and twenty acres of average allottable lands of the Choctaw and Chickasaw Nations, as provided by the terms of this agreement, either for himself or for his wife or for each of his minor children if members of said tribes; and any member of said tribes found in such possession of lands, who having the same in any manner inclosed after the expiration of ninety days after the date of the final ratification of this agreement, shall be deemed guilty of a misdemeanor."

The statute aforesaid makes it a misdemeanor for any member of the tribe to inclose or hold possession of in any manner by himself or through another directly or indirectly more land in value than 320 acres for himself, his wife, or for each of his minor children. Now then, is there any consideration for a note thus executed, or is the note contrary to public policy and void?

This court in the early case of Garst v. Love, 6 Okla. 46, 55 Pac. 19, said:

"In a suit to recover compensation for the pasturage of cattle under a contract which is alleged by the plaintiffs to provide for the defendant's turning his cattle into the * * * pasture of the plaintiffs, to be kept and cared for, and held by the plaintiffs therein, and which pasture, it is alleged, is inclosed by a post and wire fence, paragraphs of the answer which state that this inclosure is maintained upon government land, to which the plaintiffs have no right or title, and which it is alleged they are holding exclusive possession of, for rental and speculation, to the exclusion of the defendant and other persons, thereby requiring the defendant to pay for the use thereof, and that the plaintiffs' said pasture is an unlawful inclosure of public lands, in violation of the provisions of the act of Congress of February 25, 1885, state a good defense, and it is error to sustain a demurrer thereto."

From the opinion of the above case we quote the following:

"In the case of Bank of United States v. Owens, 2 Pet. 527 (7 L. Ed. 508), it was held that not only were contracts in violation of law and public policy void, but that the rule was extended to such as are calculated to affect the general interests and policy of the country. Now, while the ontract in question may not be in direct violation of law and public policy. it does, if enforced, give to the plaintiffs a reward for their violation of this express statute of the United States, and furnishes the very remuneration that is so strong a temptation for its continued violation. We must dispose of this question before us from a broad and comprehensive standpoint, rejecting technical distinctions, whose only merit would be to defeat the statute, and hold all acts within the implied, if not the express, prohibition of the statute, which tend to aid its direct violation. Any other policy would be analyzing crime and distinguishing between illegalities in the unwitting aid of a continuing violation of the law."

In Dillon & Palmer v. Allen, 46 Iowa, 299, 26 Am. Rep. 145, it is said:

"The rule to be drawn from these cases, therefore, appears to be, that when an act is absolutely prohibited by statute, or is contrary to public policy, all notes, etc., given in furtherance of that act, are null and void."

In McLaughlin v. Ardmore Loan & Trust Co., 21 Okla. 173, 95 Pac. 779, this court said:

"In a suit on a promissory note, where the proof shows the consideration thereof to be a deed of land from the payee to the payor, in possession of the payee, and held by him in violation of Act Cong. July 1, 1902, c. 1362, 32 St. 641, and that the transaction was in violation of Rev. St. U. S. § 2118 (U. S. Comp. St. 1913, sec. 4108), discloses an illegal consideration, and a motion to direct a verdict in favor of the defendant was properly sustained."

In Swanger v. Mayberry, 59 Cal. 91, which was a suit on two promissory notes given in part payment for the purchase money for growing timber on public land of which plaintiff had neither possession nor title, but in which he claimed a possessory right, and as such sold and conveyed to the defendant all of his right therein, the court said:

"Being given for the privilege of cutting down timber growing upon the public lands of the United States, the notes were given for an illegal consideration. It is made a penal offense, by act of Congress, passed March 2, 1831, to cut down timber upon any of the public lands of the United States with intent to export, dispose of, use, or employ the same, in any manner whatsoever, other than for the use of the navy of the United States; and the offense is punishable by fine and imprisonment. Rev. St. United States, § 2461 (U. S. Comp. St. 1901, p. 1527). * * * Under the act of Congress, even if the plaintiff had been in possession of the land as a settler, without proprietary rights in it, it would have been unlawful for him to cut down the timber growing upon it, for the purpose of spoliation or traffic; and it would be equally unlawful for him to contract with another to do what the law prohibits him from doing, for what the law directly prohibits a man from doing cannot be done by indirect means. And being an act forbidden by law, a contract founded upon it is invalid, and cannot be made the subject-matter of an action. The general principle is well established that a contract founded on an illegal consideration, or which is made for the purpose of furthering any matter or thing prohibited by statute, or to aid or assist any party therein, is void. This rule applies to every contract which is founded on a transaction malum in se, or which is prohibited by statute, on the ground of public policy. Ladda v. Hawley, 57 Cal. 51; Warren v. Manufacturers' Ins. Co., 13 Pick. (Mass.) 521; s. c., 25 Am. Dec. 341; Holt v. Green, 73 Pa. 198, 13 Am. Rep. 737; Woods v. Armstrong, 54 Ala. 150, 25 Am. Rep. 671."

This court in the case of Light v. Conover, 10 Okla. 737, 63 Pac. 968, said:

"We think it is clear that the written lease entered into between the plaintiff and the defendants in July, 1892. as well as the subsequent parol agreement, were entered into in direct violation of the act of Congress above referred to, and were contrary to the well-settled policy of the government in relating to the management, control and supervision of the Indians and their lands, and the law seems to be well established that no action can be maintained on a contract that is in violation of a positive statute, or is based upon an illegal or immoral act."

And in the body of the opinion in the case supra, we find the following quotation:

"Mr. Justice Johnson in the course of the opinion (referring to Mayes v. Association (58 Kan. 712, 51 Pac. 215) s..id: 'It is clear that the contract of lease between the plaintiff and the defendant conflicted with the government policy, and was a direct violation of a positive statute. It was therefore illegal, and the courts generally hold that no action can be maintained on a contract forbidden by law. * * * If from the plaintiff's own statement, or otherwise, the cause of action appears to arise ex turpi causa, or the transgression of a positive law of the state, then the court says he has no right to be assisted.' "

In the case of Hughes v. Snell, 28 Okla. 828, 115 Pac. 1105, 34 L. R. A. (N. S.) 1133, Ann. Cas. 1912D, 374, it is said:

"To the general rule that an act in violation of a statute or municipal ordinance forbidding it is void, there is the exception that when the statute or ordinance is for the purpose of raising revenue and does not make the act itself void, and the act is not malum in se nor detrimental to good morals."

The enforcement of the contract in question would tend to aid one in the violation of law, and would permit and sanction the act of Bradley in reaping the benefit of an act upon his part which was prohibited to him by law. The contract between Bradley and Turnbull in the first instance was illegal. The consideration for the same is unlawful, contrary to public policy, and absolutely void. Williams was not an innocent purchaser, but bought the note with full knowledge of the transaction as expressed by the verdict of the jury, and the finding is supported by the evidence.

The original consideration being illegal, no subsequent renewal of the contract could validate it. Being tainted with this illegality, the same is not removed by the subsequent changes or renewals. There was never any consideration for the original note, nor for the renewal thereof.

The original note was not merely without consideration, but void, and the judgment of the lower court denying recovery herein must be approved. Brake v. Ballou, 19 Kan. 397; Bemis v. Becker, 1 Kan. 227; Clough v. Hart, 8 Kan. 487; Kurtz v. Sponable, 6 Kan. 395; Jones v. Blacklidge, 9 Kan. 562, 12 Am. Rep. 503; Shelton v. Pruessner, 52 Kan. 579, 35 Pac. 201, 22 L. R. A. 709.

By the Court: It is so ordered.