## REECE v. BENGE et al.

No. 10184—Opinion Filed May 24, 1921.

(Syllabus.)

1. **Indians — Validity of Will — Devise of Allotment Before Selection.**

A will of a Cherokee citizen of the half-blood before his allotment had been selected was ineffectual to convey said allotment.

2. **Same—Statute.**

A member of the Cherokee Tribe of Indians had power to make a will prior to the act of April 26, 1906, but prior to said time he had no right to alienate his allotment by will.

3. **Same—Invalid Will — Descent of Allotment.**

B., a half-blood member of the Cherokee Tribe of Indians, made a will in 1902 attempting to convey the lands of the Cherokee Nation and the improvements thereon occupied by him, and thereafter died in 1902, and thereafter his executor selected the lands occupied by him as his allotment. Held, at the time of his death the deceased was not seised of an inheritable estate of the lands thereafter allotted to him, or his heirs, and descent of said allotment is cast at the date the certificate of said allotment is issued, and the law in effect at that particular time governs in the devolution of said allotted land. Held, further, that the will was ineffectual under the facts above stated to convey any interest in the allotment or the improvements thereon.

Error from District Court, Muskogee County; R. P. deGraffenreid, Judge.

Action by G. W. Benge et al. against Jennie Reece et al. for possession of a three-sevenths interest in certain Indian land. Judgment for plaintiffs, and the defendant named brings error. Affirmed.

R. M. Mountcastle, Joseph C. Stone, Charles A. Moon, and Francis Stewart, for plaintiff in error.

Malcolm E. Rosser and Villard Martin, for defendants in error.

McNEILL, J. This action was commenced in the district court of Muskogee county by G. W. Benge et al. against Jennie Reece et al. for possession of an undivided three-sevenths interest in and to certain lands. The petition alleged that the plaintiffs were the owners of an undivided three-sevenths interest in and to the land described, being the allotment of Samuel Houston Benge, deceased, and that plaintiffs were his heirs, and inherited an undivided three-sevenths interest, and were entitled to possession.

The defendant Jennie Reece filed an answer, alleging, in substance, the following facts: That Samuel Houston Benge was a half-blood Cherokee citizen of the Cherokee Nation and his name appeared opposite roll No. 4499. On the 24th day of October, 1902, he died. That at the time of his death he and his wife, Nancy Benge, were in possession of the land described in this controversy, occupying the same as a home. That he had improved and cultivated said land, and as such citizen he was entitled under the original Cherokee agreement to have the land scheduled and patented to him as his allotment. That on April 17, 1902, he executed a good and valid will and devised and bequeathed to the defendant Jennie Reece, the land and improvements, subject to a life estate to his wife, Nancy Benge; that said will had been probated. A copy of the will is attached to the answer.

It is further alleged that after the death of Samuel Houston Benge, in November, 1904, the lands described were selected by the executor of the estate of Samuel Houston Benge, deceased, as his allotment, and patent was duly issued and executed and acknowledged in the name of Samuel Houston Benge, deceased. The defendant contends that by virtue of the will she became the owner of said land, subject to the life estate of Nancy Benge, and that Nancy Benge died in 1917 and defendant was the sole owner of said land and improvements.

Plaintiffs filed a demurrer to said answer, which was sustained by the court, and the court decreed that plaintiffs were

the owners of a three-sevenths interest in said land and Jennie Reece, also being an heir, was the owner of one-seventh interest in said land. From said judgment, Jennie Reece has appealed.

Plaintiff in error, Jennie Reece, asserts there are two questions involved:

First. Was a Cherokee citizen capable of making a valid will to convey his allotment, and where the will was made and the deceased died prior to enrollment and prior to the selection of his allotment?

Second. Was said citizen capable of making a will which would have the effect of passing title to the improvements prior to the selection of the allotment?

The first question is not briefed by plaintiff in error, and she has apparently abandoned that position, but the two questions are so closely associated together that it is necessary to consider the decisions of this court relating to the first question, in order to properly consider the second question.

This court, in the case of Semple v. Baken, 39 Okla. 563, 135 Pac. 1141, stated:

"A will of a member of blood of the Choctaw Tribe of Indians made during or before the year 1904, before she had been enrolled as a member of the tribe, and before her allotment had been selected, was ineffectual to convey her allotment."

In the case of Chouteau v. Chouteau, 49 Okla. 105, 152 Pac. 373, it was held:

"A full-blood Creek Indian had the power to make a will prior to Act April 26, 1906, but prior to this law he had no right to alienate his allotment by will."

See, also, Wilson v. Greer, 50 Okla. 387, 151 Pac. 629; Lynch v. Franklin, 37 Okla. 60, 130 Pac. 599.

The will in the instant case was executed in April, 1902, and the allottee died before his allotment was selected. By applying the principle announced in the cases cited heretofore, the will was ineffectual to convey any interest in the allotment.

It is admitted that Samuel Houston Benge, prior to the time of his death, occupied the identical land, which was a part of the lands of the Cherokee Nation, and built improvements upon the lands, and it is contended the improvements were his personal property and the will would convey his personal property. The substance of the decision of this court in the case of Chouteau v. Chouteau, supra, was that a member of the Five Civilized Tribes had power to make a will prior to the act of April 26, 1906, and the same would convey whatever property he could convey, but he could not convey his allotment by will prior to April 26, 1906. The will in the instant case was made prior to the Cherokee Agreement, which was approved July 1, 1902, but the allottee died after the agreement was in force and effect, so that his rights to alienate or convey the property depends upon the law as it existed at the time of his death. It is contended that the improvements, under the Cherokee Agreement, at the time of his death were personal property, separate and distinct from the real estate or the allotment thereafter selected for him. Section 9 of the Cherokee Treaty or Agreement provided for the appraisement of the lands at their true value, but said appraisement should be made without reference to improvements which might have been located thereon. Section 11 of the agreement provided how the lands should be allotted and selected, and contained the following provision:

"Which lands may be selected by each allottee so as to include his improvements."

It was not compulsory that the allottee select lands upon which he had improvements, but he was left free to select or be allotted other lands, although he was given the right to select lands upon which his improvements were situated. Section 20 of the agreement provided that if any person died subsequent to the first of September, 1902, and before receiving his allotment, the allotment should be selected by his duly appointed administrator or executor, and the lands allotted descended to his heirs according to the laws of descent and distribution. In the case of McDonald v. Ralston, 65 Oklahoma, 166 Pac. 405, it was held that if a Creek citizen died before receiving an allotment, at the time of his death he was not seised of an inheritable estate in the lands afterwards allotted to him or his heirs, and the descent of such allotment was cast at the date the certificate of allotment was issued, and the law in effect at that particular time governed in the devolution of said allotted lands. No provision was made in the Cherokee Agreement for the removal of the improvements upon the lands of the Cherokee Nation by the person who had placed them upon the lands when said member did not select said lands as his allotment, but permitted them to remain as part of the land. Whether the will was sufficient to transfer the allottee's interest in the improvements and to give the plaintiff in error herein or her mother the

right to select said land as their separate and individual allotment, it is unnecessary to determine, for they did not exercise said right, but permitted the lands to be allotted to the deceased allottee, and when so allotted, the lands, with all the improvements, descended as of the date of the certificate to the heirs. It therefore follows that, the allottee, who died before receiving his allotment, not being vested with an inheritable estate, the descent of the allotment was cast at the time the certificate of allotment was issued, and no provision having been made for the removal or sale of the improvements at the date of the certificate of allotment, the improvements would be considered a part of the land and descend as such. Section 14 provided that the lands allotted should not be incumbered, taken, or sold to satisfy any debt or obligation or be alienated by the allottee or his heirs before the expiration of five years from the date of ratification of the act. The purpose of this section was to grant to the allottee or his heirs the land free from all incumbrance, and when the land was once allotted. it included the land with all the improvements thereon.

We, therefore, are of the opinion that the will did not have the force and effect of separating the improvements from the land and passing title thereto, but the land with the improvements descended to the heirs on the date of the certificate of allotment, and the court did not err in sustaining the demurrer to the petition.

HARRISON, C. J., and PITCHFORD, MILLER, and NICHOLSON, JJ., concur.